UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| BRUCE KONYA, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>LOCKHEED MARTIN CORPORATION,<br><br>    Defendant. | No: 8:24-cv-00750-BAH<br><br>Hon. Brendan A. Hurson |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY FOR IMMEDIATE APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

Plaintiffs Bruce Konya, Simon Shiff, Stephen Schwarz, and Dana Vasquez, individually and as representatives of a class of participants and beneficiaries of behalf of the Lockheed Martin Corporation Salaried Employee Retirement Program and the Lockheed Martin Aerospace Hourly Pension Plan, hereby oppose Defendant's Motion to Certify for Immediate Appeal Pursuant to 28 U.S.C. § 1292(b), as follows.

**INTRODUCTION AND BACKGROUND**

The principal aim of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, is to guarantee the "equitable character and the soundness of [private pension] plans," 29 U.S.C. § 1001(c), to protect "the interests of participants in employee benefit plans and their beneficiaries." *Id.* § 1001(b). *See also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983) ("ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans"). To this end, ERISA imposes strict standards of fiduciary conduct derived from the common law on those who manage and administer plans and their assets, and flatly prohibits certain enumerated transactions that Congress viewed as likely to

1

entail self-dealing or other harmful consequences for plans and their participants, subject to a number of exemptions that defendants have the burden of proving. *See* 29 U.S.C. §§ 1104(a), 1106. And the statute empowers the plan participants who are at the center of ERISA's protective scheme to sue in federal court to enforce these requirements, and to redress violations, including through injunctive relief to undo transactions that run afoul of ERISA's rules. *Id*. at §§ 1132(a)(2), (3), 1109.

Four retirees who had worked for decades for Defendant Lockheed Martin brought a putative class action alleging that Lockheed violated these ERISA duties when it removed them and roughly 31,000 others from participation in one of two defined benefit pension plans governed by ERISA, through the purchase of group annuities from Athene Annuity and Life Company and Athene Annuity & Life Assurance Company of New York (collectively "Athene"). ECF No. 1. These pension risk transfers ("PRTs"), Plaintiffs allege, were both unsound and motivated by Lockheed's own desire to profit at the expense of the plan participants. *Id*. at 2 ¶ 3. As such, Plaintiffs allege that the PRTs not only immediately injured Plaintiffs and conversely benefited Lockheed, but also put Plaintiffs' retirement income at substantial risk of disruption and loss. *See id*. at 2 ¶ 3, 28 ¶ 73. ERISA expressly provides retirees with a cause of action to seek relief following unlawful PRTs and provides them with the right to sue to even before they have suffered any monetary loss. 29 U.S.C. § 1132(a)(9) (retirees may sue to assure receipt "of the amounts provided *or to be provided*," including through the "posting of security") (emphasis added).

Defendant moved to dismiss the complaint alleging, among other things, that Plaintiffs had failed to plead a constitutionally cognizable injury-in-fact. This Court denied the motion, holding, as relevant here, that Plaintiffs met the Article III threshold by pleading an "increased and significant risk that they will not receive the benefit payments to which they are entitled and a

decrease in value of their pension benefits due to uncompensated risk." ECF No. 79, at 17 (quoting ECF 1, at 28 ¶ 73). The Court pointed to, among other things, many detailed factual allegations in the Complaint that the Court viewed as supporting Plaintiffs' assertion of substantial risk to their retirement income, including the Complaint's discussion of the collapse of Executive Life Insurance, Athene's risky strategies for avoiding insurance reserve requirements, and the concerns raised by lawmakers and experts over such high-risk strategies in general and those employed by Athene in particular. ECF No. 79, at 17-19. The Court concluded that "at this early stage, Plaintiffs have sufficiently alleged injury for Article III purposes by alleging a substantially increased risk that the Athene annuity may fail and jeopardize Plaintiffs' future benefits." *Id.* at 27.

## ARGUMENT

In general, appellate court jurisdiction "depends on the existence of a decision by the [d]istrict [c]ourt that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467 (1978) (citing *Catlin v. United States,* 324 U.S. 229, 233 (1945)). "Ordinarily, a denial of a motion to dismiss constitutes an interlocutory order that is not immediately appealable." *D.C. v. Trump*, 959 F.3d 126, 130 (4th Cir. 2020) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

There are narrow exceptions to the final order rule that allow litigants to appeal non-final orders, *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 753–54 (3d Cir. 1974) (discussing the legislative history of interlocutory appeals), including in 28 U.S.C. § 1292(b), which permits an interlocutory appeal "upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.,* 673 F.2d 1020, 1025-26 (9th Cir. 1982). Under Section 1292(b), a district court may certify a non-final order for interlocutory appeal only if it concludes that the order: (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for

difference of opinion"; and (3) "that an immediate appeal therefrom may materially advance the termination of the litigation." 28 U.S.C. § 1292(b). Like many parties that have lost such a motion, Lockheed would like to delay having to file an answer and engage in discovery. But this case does not come close to satisfying the requirements for an interlocutory appeal and stay of district court proceedings.

"The decision to certify an interlocutory appeal is firmly in the district court's discretion." *Randolph v. ADT Sec. Servs., Inc.*, Civ. No. DKC 09-1790, 2012 WL 273722, at *5 (D. Md. Jan. 30, 2012); *accord Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015). But because an interlocutory appeal stands in contrast to the general rule against appeals of non-final orders and piecemeal litigation, it is an "extraordinary remedy," and certification under Section 1292(b) certification is "not to be granted lightly." *Fannin v. CSX Transp., Inc.,* No. 88-8120, 1989 WL 42583, at *2 (4th Cir. Apr. 26, 1989) (unpublished) (*per curiam*); *see also James v. Jacobson,* 6 F.3d 233, 237 (4th Cir. 1993) ("piecemeal review of decisions that are but steps toward final judgments on the merits are to be avoided, because they can be effectively and more efficiently reviewed together in one appeal from the final judgments"). Section 1292(b) should be used sparingly and thus its requirements must be strictly construed. *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). Otherwise, nearly every party who loses a motion to dismiss would seek an interlocutory appeal.

Thus, the district court should begin its Section 1292(b) analysis "by emphasizing the gravity of the relief" sought in such a request. *Cooke–Bates v. Bayer Corp.,* No. 3:10cv261–JRS, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010). Moreover, "[e]ven if the requirements of [S]ection 1292(b) are satisfied, the district court has 'unfettered discretion' to decline to certify an interlocutory appeal if exceptional circumstances are absent." *Manion v. Spectrum Healthcare*

4

*Res.,* 966 F. Supp. 2d 561, 567 (E.D.N.C. 2013) (citation omitted); *see also Fannin*, 1989 WL 42583, at *2 (even if the district court certifies an order for interlocutory appeal, the movant must still demonstrate the existence of "exceptional circumstances" to the court of appeals).

As explained below, Defendant fails to satisfy any of the three requirements set forth in Section 1292(b). Nor are there are any other exceptional circumstances that weigh in favor of such an interlocutory appeal. For these reasons, this Court should decline to certify an interlocutory appeal from its order (ECF No. 79) denying Defendant's motion to dismiss.

## I. Whether Plaintiffs Have Adequately Alleged an Injury-in-Fact for Purposes of Establishing Article III Standing Does Not Involve a Controlling Question of Law.

To satisfy the first element, the party seeking certification must demonstrate that the order involves a (1) "question of law" that is (2) "controlling." 28 U.S.C. § 1292(b). Defendant cannot demonstrate either prong. *See Fannin,* 1989 WL 42583, at *5 ("Certainly the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes.").

Defendant identifies this Court's "finding that Plaintiffs alleged an imminent injury sufficient to establish Article III" as involving a "purely legal issue." ECF No. 83-1, at 2 of 17. But this proposed question is not a "pure question of law," which is "something the court of appeals could decide quickly and cleanly without having to study the record." *In re Text Messaging Antitrust Litig.,* 630 F.3d 622, 626 (7th Cir. 2010); *see, e.g.*, *Deflice v. U.S. Airways, Inc.*, 404 F. Supp. 2d 907, 908-09 (E.D. Va. 2005) (whether a presumption of prudence applies to a fiduciary selection of employer stock in a 401(k) plan presents a pure question of law).

To the contrary, as the phrase "injury-**in-fact"** suggests, whether a party has established such an injury is often primarily a factual issue. That is certainly the case here. Despite Lockheed's

insistence that it asserted only a facial attack on jurisdiction, this Court correctly recognized that "Plaintiffs raise[d] various factual claims in support of the assertion that Athene is at risk of collapse" and Lockheed, for its part, "counter[ed] with a narrative attesting to the solvency, if not vibrancy, of Athene" and asking "the Court to review and credit documentation attesting to the deposit of billions of dollars solely for the purpose of paying its obligations under the PRTs." ECF No. 79, at 26-27 (citing ECF 26-1, at 22, ECF 65-7 through ECF 65-10).

Thus, the "injury in fact" issue raised by Defendant is clearly factual, as evidenced by Plaintiffs' detailed factual allegations, the Court's robust analysis, which dove deeply into those factual allegations, and the fact that Lockheed had to go far outside the complaint to dispute standing by relying on the truth of voluminous outside documents and factual assertions. Such factual disputes cannot, however, be properly resolved without discovery. *See* ECF No. 79 at 10-11, 26-27. Moreover, at the pleading stage, only a modest showing is necessary to establish injury-in-fact, a showing that this Court correctly concluded Plaintiffs have surpassed. *See Conservation Council of North Carolina v. Costanzo,* 505 F.2d 498, 501 (4th Cir. 1974) ("The claimed injury need not be great or substantial; an identifiable trifle, if actual and genuine, gives rise to standing." (internal quotation marks omitted)); *Bowman v. Wilson,* 672 F.2d 1145, 1151 (3d Cir. 1982) ("The contours of the injury-in-fact requirement, while not precisely defined, are very generous," requiring only that claimant "allege [ ] some specific, 'identifiable trifle' of injury"); *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005) ("Injury-in-fact is not Mount Everest.").

Because the issue of imminent harm that Defendant raises is "heavily freighted with the necessity for factual assessment," *Fannin,* 1989 WL 42583, at *5, the question is not actually a facial attack on Plaintiffs' Article III standing for purposes of Section 1292(b) interlocutory

6

review. *See Xoom, Inc. v. Imageline, Inc.,* Civ A 3:98CV00542, 1999 WL 1611444, at *2 (E.D. Va. Sept. 3, 1999) (finding an issue not a "controlling question of law" because "it was in part based on facts" placed into evidence by the parties). Here, the Defendant has made factual arguments based on their voluminous submissions attached to the motion to dismiss in an attempt to counter the detailed factual allegations in the Complaint, as this Court recognized. ECF No. 79, at 26-27 (citing ECF 65-7 through ECF 65-10).

For similar reasons, the issue that Defendant raises concerning whether this Court correctly determined that Plaintiffs asserted a sufficient risk of future harm is not controlling. Even if the court of appeals were to grant the interlocutory appeal and reverse, Plaintiffs would almost surely be given the opportunity to amend their complaint to allege additional facts to make such a showing of harm. *See Laber v. Harvey*, 438 F.3d 404, 426, 429 (4th Cir. 2006) (concluding that district court abused its discretion in denying leave to amend given "the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities"). As we explain in the next section, that is exactly what Plaintiffs are asking to do in *Camire v. Alcoa USA Corp.*, No. 1:24-cv-01062-LLA, 2025 WL 947526 (D.D.C. 2025), the case on which Defendant principally relies.

## II. There is Not Substantial Ground for a Difference of Opinion on Whether Plaintiffs Have Alleged an Injury-in-Fact.

The requirement of a "substantial ground for difference of opinion" is satisfied only where "courts, as opposed to parties, disagree on a controlling legal issue." *Randolph*, 2012 WL 273722, at *6. Moreover, a "mere lack of unanimity, or opposing decisions outside of the governing circuit, need not persuade a court that a substantial ground for disagreement exists." *Virginia ex rel. Integra Rec, LLC v. Countrywide Sec. Corp.*, Civ. No. 3:14cv706, 2015 WL 3540473, at *5 (E.D. Va. June 3, 2015) (citation omitted)). Such ground "must arise 'out of a genuine doubt as to whether the district court applied the correct legal standard in its order.'" *Wyeth,* 703 F. Supp. 2d

at 527 (citation omitted). "[J]ust any simple disagreement between courts will not merit certification." *Cooke-Bates,* 2010 WL 4789838, at *2.

Here, as described above, the core disagreement between the parties on the risk of future harm is factual, and does not turn on any "genuine doubt" as to whether this Court "applied the correct legal standard." *Wyeth,* 703 F. Supp. 2d at 527 (citation omitted). Because there is no disagreement about a "controlling legal issue" even among the parties, much less a genuine disagreement among the courts, there is no "substantial ground for a difference of opinion" to support certification under Section 1292(b). *Randolph*, 2012 WL 273722, at *6. And for much the same reason, the fact that this Court referred to the standing issue as a "close call," ECF No. 79, at 25, does not mean that there is a real dispute about the applicable legal standard.

Given the fact-bound nature of the issue, pointing to the recent decision in *Camire* is of no help to Defendant. In that case, a district court judge in another Circuit concluded that different plaintiffs in a different pension plan challenging a different Athene annuity transaction executed by different parties did not allege facts to show a sufficient risk of harm to establish Article III standing. 2025 WL 947526, at *7. But the allegations about the PRT transactions themselves are particular to those transactions. And that the judge in a different case – on review of a different complaint – decided as a factual matter that other plaintiffs challenging a different transaction did not sufficiently allege risk and does not establish a legal disagreement about whether this Court was correct to hold that the facts alleged in the complaint in this case sufficed. Indeed, the plaintiffs in *Camire* are seeking to amend their complaint to do just that and are confident that they can do so. ECF No. 43, *Camire v. Alcoa*, No. 1:24-cv-01062 (Mot. to Alter or Amend Judgment filed April 25, 2025).

8

### III. Certifying the Appeal Will Not Materially Advance the Resolution of This Case.

With regard to the third Section 1292(b) factor, courts look to whether "'early appellate review might avoid protracted and expensive litigation.'" *Xoom,* 1999 WL 1611444, at *1 (quoting *Howes v. W.R. Peele, Sr, Trust,* 889 F. Supp. 849, 852 (E.D.N.C. 1995)). This factor is satisfied if prompt resolution of the controlling issue of law "would either terminate the case outright or, at the very least, serve to focus the challenge, inform discovery, and thereby shorten the litigation." *In re Trump*, 958 F.3d 274, 322 (4th Cir. 2020).

There is no reason to think that early appellate review of the issue identified by Defendant – whether Plaintiffs have alleged sufficient facts to establish an imminent risk of future harm for purposes of Article III – would either terminate or shorten the litigation. Defendant is incorrect that because standing is a "threshold legal issue," a decision favorable to them will end the lawsuit. ECF No. 83-1, at 9 (citations omitted). To the contrary, as explained above, if Plaintiffs were to lose on this pleading issue, they would seek and very likely be granted the opportunity to amend their Complaint (which they have never done) and have more that they could and would say about – for example – the risks of state regulatory action against Athene causing an interruption and loss of Plaintiffs' annuity payments. Given that the best that Defendant can hope for from a favorable appellate decision is not *termination* of the litigation but rather *further* pleading-stage litigation, and if Defendant is not successful on appeal, it will simply have caused delay at the very beginning of this case, an interlocutory appeal would not "materially advance the resolution of the case."

### IV. No Exceptional Circumstances Warrant Certification.

Defendant makes no attempt to separately show exceptional circumstances justifying an interlocutory appeal. *See Manion,* 966 F. Supp. 2d at 567 (the district court may decline to certify

9

in the absence of exceptional circumstances); *Fannin*, 1989 WL 42583, at *2 (the movant must demonstrate "exceptional circumstances" to the court of appeals). And there are none.

That Defendant moved to dismiss based on, among other reasons (which this Court rejected), a perceived lack of Article III standing does not constitute an extraordinary circumstance. Unsuccessful pleading-stage standing challenges are common these days in ERISA cases and federal civil suits more generally. Furthermore, this Court correctly saw the rule that "subject matter jurisdiction may be challenged 'at any time,'" as cutting the other way. ECF No. 79, at 27 (citing *Ins. Corp, of Ir., Ltd. v. Compagnie des Bauxites*, 456 U.S. 694, 701-02 (1982); Fed. R. Civ. P. 12(h)(3)). As the Court noted, "if further discovery reveals that this case does not present a risk-of-collapse scenario similar to the one left unaddressed in *Thole* [*v. U.S. Bank N.A*, 590 U.S. 538 (2020)], Defendant is free to again raise the issue." *Id*. That Defendant can challenge standing at any point at which there is a basis for doing so also undercuts Defendant's assertion that "the extraordinary burden of putative class-action litigation supports certification," because it supposedly faces the unjust prospect of spending millions of dollars on years of litigation leading up to trial. ECF No. 83-1, at 14.

Nor is there anything nefarious, much less extraordinary, about the fact that there are multiple lawsuits challenging different PRTs that have transferred the obligations to ensure their pension promises to their retired employees from several large companies to Athene. Again, the Court correctly read this fact as supporting, not undercutting, the likelihood that Plaintiffs' retirements are at risk. ECF No. 83-1, at 14, 18-19.

### V.     Defendant Has Made No Showing to Justify a Stay Proceedings in this Court.

"Congress expressly established the availability of an interlocutory appeal under Section 1292(b) on the condition that it '**shall not stay** proceedings in the district court' unless the district

court exercises its jurisdiction to so order." *D.C. v. Trump*, 344 F. Supp. 3d 828, 843 (D. Md. 2018) (citing 28 U.S.C. § 1292(b), emphasis added), *vacated on other grounds*, 838 F. App'x 789 (4th Cir. 2021). Thus, the presumption "is against a stay." *Id.* (citing David G. Knibb, *Fed. Court of Appeals Manual* § 5:6 (6th ed. 2018)). The movant "bears the burden of establishing its need" for a stay, *Clinton v. Jones*, 520 U.S. 681, 708 (1997), taking three factors into account: (1) the interest in judicial economy; (2) the hardship to the moving party if the action is not stayed; and (3) the potential damage or prejudice to the non-moving party. *International Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018).

Defendant has made no attempt to justify the need for a stay under these three factors. Nor could it. Allowing discovery to proceed, at this early stage, would promote judicial economy without putting any appreciable burden on the court. Likewise, Defendant Lockheed is a multi-billion dollar corporation that would not be significantly burdened, economically or otherwise, by allowing discovery to commence in this case during the appeal. But Plaintiffs, on the other hand, could be greatly prejudiced by the delay: they are retirees dependent on their retirement income, and the point of this suit is to ensure the security of their benefits.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny Defendant's Motion.

Respectfully submitted,

DATED: April 28, 2025      By:     */s/ Elizabeth Hopkins*
                                                  KANTOR & KANTOR LLP
                                                  Elizabeth Hopkins (21946)
                                                  9301 Corbin Avenue, Suite 1400
                                                  Northridge, CA 91324
                                                  T: (818) 886-2525
                                                  F: (818) 350-6272
                                                  ehopkins@kantorlaw.net

                                                  *Attorneys for Plaintiffs*

/s/ Jerome J. Schlichter
SCHLICHTER BOGARD LLP
Jerome J. Schlichter (*pro hac vice*)
Sean E. Soyars (*pro hac vice*)
Kurt C. Struckhoff (*pro hac vice*)
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
T: (314) 621-6115
F: (314) 621-5934
jschlichter@uselaws.com
ssoyars@uselaws.com
kstruckhoff@uselaws.com

*Attorneys for Plaintiffs*

/s/ Cyril V. Smith
ZUCKERMAN SPAEDER LLP
Cyril V. Smith (07332)
100 E. Pratt Street, Suite 2440
Baltimore, Maryland 21202
T: (410) 949-1145
F: (410) 659-0436
csmith@zuckerman.com

Bryan M. Reines (*pro hac vice*)
2100 L St. NW, Suite 400
Washington, D.C 20037-1525
T: (202) 778-1800
F: (202) 822-8106
breines@zuckerman.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that the service required by Federal Rule of Civil Procedure 5(a) has been made and that, on April 28, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to counsel of record for this case and which is available for viewing and downloading from the ECF system of the U.S. District Court for the District of Maryland.

                                            */s/ Elizabeth Hopkins*
                                            Elizabeth Hopkins